59 N.J. Super. 553 (1960)
158 A.2d 223
EDWARD B. STAFFORD SMITH, ET AL., PLAINTIFFS-RESPONDENTS,
v.
ZONING BOARD OF ADJUSTMENT OF THE BOROUGH OF MADISON, DEFENDANT, AND FORTUNATUS S. KIRKPATRICK, WALKER J. WALLACE, ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 2, 1960.
Decided February 23, 1960.
*554 Before Judges PRICE, GAULKIN and SULLIVAN.
*555 Mr. Charles M. Judge argued the cause for the defendants (Mr. Frank J. Valgenti, Jr., attorney).
Mr. J. William Barba argued the cause for the plaintiffs (Shanley and Fisher, attorneys).
No appearance for defendant Zoning Board of Adjustment of the Borough of Madison.
The opinion of the court was delivered by GAULKIN, J.A.D.
The individual defendants appeal from a summary judgment of the Superior Court, Law Division, which ordered a hearing by the Zoning Board of Adjustment of the Borough of Madison of plaintiffs' application for a variance. The board has taken no part in this appeal.
On November 19, 1957 plaintiffs filed an application under N.J.S.A. 40:55-39(d) for a variance to permit the construction of a garden apartment upon land which they have contracted to buy. A hearing thereon was held on December 17, 1957 before four members of the board. One vacancy existed on the board due to the death of a member. After plaintiffs submitted their evidence, the hearing was adjourned to January 21.
On January 13, 1958 Ernest Mazzarissi was appointed to fill the vacancy. On January 21 the adjourned hearing took place before all five members. The only testimony then heard was that of three independent witnesses called by the board. Decision was reserved until February 18, 1958.
At a regular meeting of the board held on that date Mr. Mazzarissi announced "that since he had not been a member of the board at the time the application was originally presented and, therefore, had not heard full testimony, he would have to disqualify himself from decision." The minutes show that Chairman Stockfleth "inquired of Mr. Applegate [the board's counsel] if Mr. Mazzarissi's action was legally correct. Mr. Applegate replied that it was." The chairman then made a statement for the board, during the course of which he said (emphasis ours):
*556 "* * * of the four members that are entitled to vote on this matter, we find ourselves evenly divided without any opportunity of obtaining a majority in either direction. Therefore, a recommendation is not to be made to the Mayor and Council, and I suppose that takes the same position as if it is denied; at least temporarily."
Almost a year later, on January 12, 1959, a new application was filed by the same plaintiffs asking for the same variance. Plaintiffs' counsel said at the oral argument that the delay was due to the fact that the time allowed plaintiffs in the purchase contract to obtain the variance expired soon after the tie vote, and the new application was made as soon as the contract was renegotiated. On January 26 Mr. Applegate advised the board by letter that in his opinion "under the facts of the instant case, the applicants should be heard on the merits." On February 9 counsel for the objectors wrote the board as follows:
"I intend to appear at the stated time of the meeting to argue (1) the application is illegal, and (2) the Board is without authority to hear it. If my motion for the dismissal of the application is denied then I intend to immediately test the validity of the proceedings in the Superior Court. Consequently it is my suggestion that a hearing on the merits of the application itself be not commenced until either the Board or the Superior Court has disposed of the original question."
On February 16 plaintiffs appeared before the board ready to introduce testimony in support of the application. Counsel for the objectors then moved to dismiss the application on the ground "that this board, having once heard this application, cannot now re-hear it again. It has exhausted its jurisdiction over this particular subject matter."
After lengthy argument by counsel for plaintiffs and for the objectors the board went into recess to consider the motion. When the members returned, the chairman announced "we will not be in a position to reach any decision one way or the other tonight" and stated that the motion would be decided on March 3. For reasons which will appear later, we deem the following colloquy which then ensued significant:
*557 "The Chairman: This decision, as the board sees it, is merely one of whether we agree to hear it again or not agree to hear it again. From that point on, I believe it will be in the hands of you gentlemen.
Mr. Valgenti: May I ask you, Mr. Chairman, if you should decide that the law is such that you can hear this application again, then I would ask your indulgence to this extent, that, before proceeding with the hearing, that I be permitted the opportunity to make my application to the Superior Court for a restraining order to restrain the board from hearing the question until the legal matter itself has been decided by the upper court * * *
Mr. Chairman: On that point, Mr. Valgenti, the board also has agreed that they would not care to go ahead with the hearing until this legal point is decided by the court. It is obviously something that we can't decide."
On March 3 it was moved, and carried by a 3-2 vote, that "the motion presented by Mr. Valgenti be granted and that the board refuse to hear the application of Edward B. Stafford Smith." Plaintiffs consequently filed their complaint in lieu of prerogative writs to compel the board "to hear and determine plaintiff's new application on its merits." The facts were then stipulated and the plaintiffs and the individual defendants each moved for summary judgment, with the result stated.
Plaintiffs argue in their briefs that the tie vote of the board decided nothing; that it was a nullity and, therefore, they had the absolute right to file another application, which the board was bound to hear on its merits. Defendants, on the contrary, argue in their briefs that since R.S. 40:55-41 requires "[t]he concurring vote of three members of the board * * * to effect or recommend any exceptions to or variations from such ordinance," the failure to obtain three votes constitutes a denial of the application, whether the vote be 2-1, 2-2, or any other combination without three in favor, regardless of the fact that no other votes were cast because of vacancies, absences, disqualification, refusal to vote or any other reason. The defendants also draw a parallel from R.S. 40:55-45, which provides that failure of a board to act upon an appeal within sixty days from the date of *558 hearing is tantamount to a denial. Therefore, say defendants, the plaintiffs had the right to review this "denial" by suit within the time limited by R.R. 4:88-15 and, having failed to do so, they are now barred from prosecuting the new and admittedly identical application. For this proposition defendants cite Russell v. Tenafly Board of Adjustment, 31 N.J. 58, 65 (1959).
In the course of the oral argument the parties receded somewhat from their extreme positions. The defendants conceded that a zoning board of adjustment has the right to grant a rehearing in a proper case, but said that (1) such a rehearing must be requested promptly and not, as here, a year later; (2) this was not a "proper case" because the only new factor was the appointment of the fifth member which, defendants say, is not enough under the Russell case; and (3) in any event, what plaintiffs requested here was not a rehearing but a hearing on a new application. Plaintiffs, in turn, now concede that they had the right to treat the 2-2 vote as a denial and to have it reviewed accordingly, but they assert that (1) they are not barred from other relief by their failure to do so; (2) the board had the right to decide, because of the tie vote and the new appointment, that the new application should be heard on its merits, as the board's counsel advised; (3) in any event the board had the right to treat the new application as an application for rehearing and to grant it; and (4) the board dismissed the application because it did not understand it had the aforesaid rights and powers but believed or feared that it no longer had jurisdiction.
As their final point plaintiffs urge that since the question is one of procedure and not of substance, and since it was unsettled and extremely doubtful when the board dismissed the application, justice demands that plaintiffs now be given a hearing on the merits, as the Law Division ordered.
"For future guidance" (See State v. Corby, 28 N.J. 106, 117 (1958); cf. Dalton v. St. Luke's Catholic Church, 27 N.J. 22, 25 (1958)) we hold that the failure to obtain *559 three affirmative votes as required by R.S. 40:55-41 must be deemed a denial of the application, even when the vote is a tie, and the applicant may seek review accordingly.
We hold that the right to such review does not detract from the power of the board to grant a rehearing whenever the board thinks it will "serve the ends of essential justice and the policy of the law." Handlon v. Town of Belleville, 4 N.J. 99, 107 (1950). When and under what conditions such a rehearing shall be granted is for the board to decide, subject to the same review as its other decisions. Handlon v. Town of Belleville, supra; Mackler v. Board of Education of City of Camden, 16 N.J. 362, 369 (1954); Russell v. Tenafly Board of Adjustment, supra; Lubliner v. Board of Alcoholic Beverage Control, 59 N.J. Super. 419 (App. Div. 1960). The Russell case stated the considerations which normally enter into a decision whether a prior determination of a zoning board of adjustment is res judicata. However, the Supreme Court did not intend the rules stated in Russell to be immutable or definitive. In any event, the rules laid down in Russell related to repeated applications, and not to rehearings. In its letter to plaintiffs after the March 3 meeting the board called plaintiffs' application one "requesting a rehearing." However, plaintiffs called it, in their complaint, a hearing on a "new application" and we shall treat the matter accordingly.
It is true, as plaintiffs say, that at the time of the various proceedings before the zoning board of adjustment the principal questions here involved were unanswered. They were questions about which able counsel differed with good reason, and we ourselves have found the problems to be not of easy solution. Consequently it is plain to see why the board was so uncertain of its prerogatives and why at least some of its members preferred to wait for an authoritative ruling by the court. A reading of all that was said at the various meetings of the board indicates that, as plaintiffs say, those who voted to dismiss the application very likely may have done so because they believed the law gave *560 the board no other choice. As we have said, the board did have a choice. Indeed, if the board had chosen to hear the second application on its merits we would not have disturbed that decision under the facts here involved.
In Russo v. Governor of State of New Jersey, 22 N.J. 156 (1956) the Governor removed Russo from office because he believed he had no right to impose a lesser penalty. The Supreme Court found that he did have that right and therefore remanded the case to the Governor for his further consideration, saying at pages 175-176 of 22 N.J.,
"If removal is the punishment that the Governor desired to impose, no harm has been done to either party; but, if removal is the punishment that the Governor felt obligated to impose by virtue of his construction of the Constitution, then injustice has been done to both the appellant and the Governor."
To paraphrase Russo, if the dismissal of the application was the only thing the majority of the board believed they were empowered to do by virtue of their construction of the law, or until a ruling by the court, then injustice has been done to both the plaintiffs and the board. Under such circumstances we would ordinarily, as in Russo, remand the matter to the board for it now to determine, in the light of its present awareness of its powers, whether in its judgment the application should be heard on its merits. However, in view of the already protracted proceedings we conclude that justice requires, in the unique circumstances of the case at bar, that a hearing on the merits of the new application be had without further delay.
Affirmed. No costs.