ST. CASSIAN'S CATHOLIC CHURCH, MONTCLAIR, NEW JERSEY, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOSEPH ALLEN, INSPECTOR OF BUILDINGS OF THE TOWN OF MONTCLAIR, IN THE COUNTY OF ESSEX, THE BOARD OF ADJUSTMENT OF THE TOWN OF MONTCLAIR, IN THE COUNTY OF ESSEX, AND THE TOWN OF MONTCLAIR, IN THE COUNTY OF ESSEX, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.

Argued April 1, 1963—Decided May 6, 1963.

*Mr. Samuel Allcorn, Jr.* argued the cause for appellants.

*Mr. Harold J. Brown* argued the cause for respondent (*Messrs. Joyce and Brown,* attorneys; *Mr. Vincent J. Joyce,* on the brief).

The opinion of the court was delivered

Per Curiam. In 1951 the plaintiff sought a permit to erect an elementary school building at Lorraine and Norwood Avenues in Montclair. Its application was denied by

the building inspector and it appealed to the Board of Adjustment. A hearing was held before the Board and considerable evidence was introduced including testimony by Mr. Edwards, Montclair Town Planner, with respect to the relationship of proposed playground area to school site. He referred particularly to the recommendations of the State Board of Education, as set forth in its Guide to Schoolhouse Planning and Construction, and to the recommendation by Messrs. Engelhardt and Engelhardt, well-known authorities in school planning, that "the playground, exclusive of lawns and gardens, should provide a minimum of 100 square feet per child." Mr. Edwards' testimony indicated that the Montclair public schools had playground areas well in excess of 100 square feet per child. He named the Bradford School with 193 square feet, Mt. Hebron 196.5, Nishuane 220, Edgemont 228, Rand 291, Watchung 359, Grove Street 454, George Washington 493 and Northeast 1230. All of his figures were based on actual enrollment.

The plaintiff's plans included a paved playground area of 28,000 square feet and its architect testified that the school would have a capacity of 400 although that figure was unrelated to the standards recommended by the State Board for public schools. On October 22, 1951 the Board of Adjustment granted the plaintiff's request for permission to construct the school, subject, however, to five conditions (not pertinent here) and to a sixth condition which read as follows: "That the enrollment of pupils in said school shall at all times be limited to the extent that for each pupil enrolled there shall be usable outside playground area of not less than one hundred (100) square feet." The plaintiff did not appeal or seek other review of the conditions. Instead it proceeded with the construction of its school and began operations with an enrollment of approximately 200 pupils. This, of course, was well within the limitation of the sixth condition.

The enrollment at the school increased steadily and approximately 430 pupils were enrolled for the September

1961 term. Despite the much larger enrollment, the playground area was never expanded although the record suggests that may be possible through acquisition or conversion of other open area. When the violation of the sixth condition was called to the plaintiff's attention it filed a petition dated July 19, 1961 seeking its cancellation. A hearing was held during which the plaintiff presented evidence including testimony by Dr. Hollingsworth, Chairman of the Department of School Administration of Seton Hall University. He stated that he did not consider the limitation of one child for every 100 square feet of playground area to be reasonable since "in the Metropolitan Area with a density of population and space at a premium, you must necessarily plan schools on very small plots of ground." However, he did not dispute the Engelhardt recommendation where geographically feasible and expressly acknowledged that "it would be much desirable to have more" playground area at the plaintiff's school.

On October 2, 1961 the Board of Adjustment granted other relief prayed for by the plaintiff but denied its request for cancellation of the sixth condition. It stated that the plaintiff had presented no evidence of special reasons which would justify elimination of the condition and that if the increased enrollment were permitted without the limitation of the sixth condition, the intent and purpose of the zone plan and zoning ordinance would be substantially impaired and there would be substantial detriment to the public good. Thereafter the plaintiff filed a complaint in the Law Division of the Superior Court which did not question the original authority of the Board to impose the condition but charged that the Board's later refusal to rescind it was "arbitrary, capricious and unreasonable."

After the defendants had filed their answer to the plaintiff's complaint, *Chapter* 138 of the *Laws of* 1961 was enacted. *N. J. S. A.* 40 :55–33.1. That statute was designed to eliminate zoning discrimination "between public and private day schools, not operated for profit, of elementary or high school grade." In due course the plaintiff filed a supple-

mental complaint which attacked, as discriminatory, the provision of the Montclair Zoning Ordinance under which public schools were the only schools which could operate as conforming uses within Zone R-1 which included the plaintiff's premises. On February 20, 1962 the governing body of Montclair amended its ordinance to provide in effect that no schools either public or private could operate as conforming uses within that zone.

In *St. Cassian's Catholic Church v. Allen*, 77 *N. J. Super.* 99 (1962), the Law Division reversed the Board of Adjustment's refusal to exscind the sixth condition. The defendants appealed to the Appellate Division and we certified before argument there. The Law Division did not find that the Board's action was arbitrary, capricious or unreasonable, and the testimony would not have supported any such finding. On its face the condition was designed to further the very broad purposes of zoning, as set forth in *R. S.* 40:55-32, by insuring sufficient open space and off-street facility. The burden of establishing that current circumstances called for its elimination rested on the plaintiff and its evidence fell far short of carrying that burden. In refusing to exscind the condition, the Board of Adjustment was exercising a discretionary authority and on the record submitted by the parties, this court would not at all be justified in finding an abuse of discretion. *Cf. Black v. Montclair*, 34 *N. J.* 105, 113-114 (1961).

The Law Division found that the limitation embodied in the sixth condition had not been applied to other schools and that this constituted discrimination in violation of *Chapter* 138. See 77 *N. J. Super.*, at *p.* 118. Perhaps in a formal sense there had been discrimination prior to 1962 since application to the Board of Adjustment had been required of the plaintiff but not the public schools. However, in a substantial sense there had been no discrimination by the imposition of the sixth condition, for the record indicates that the public schools had more than satisfied the requirement of at least 100 square feet of playground area per

child and during oral argument counsel for Montclair expressly represented that now to be the fact. *Chapter* 138 is not concerned with technisms or formalisms. It seeks to eliminate zoning discrimination between public schools and nonprofit private day schools but the thing aimed at is actual discrimination rather than formal discrimination. If, in substance, they are being dealt with alike, then there is no evil within the legislative contemplation.

Many constitutional issues as well as questions relating to the precise scope of *Chapter* 138 have been raised by the parties but these should not be determined in a case where, as here, the record furnishes no fair support for the charge of discrimination. Since the public schools are maintaining playground areas of at least 100 square feet per child, the plaintiff's claim under *Chapter* 138 must fail. Nothing we have said will preclude the plaintiff from effecting compliance with the sixth condition through enlargement of its playground or otherwise, nor will it bar a later application for relief in the event the then prevailing circumstances indicate unlawful discrimination.

Reversed.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.