118 N.J. Super. 453 (1972)
288 A.2d 312
THREE L CORPORATION, PLAINTIFF,
v.
BOARD OF ADJUSTMENT, CITY OF NEWARK, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided March 3, 1972.
*454 Mr. John C. Love, attorney for plaintiff (Mr. Joseph Charles on the brief).
Mr. Louis Asarnow, attorney for defendant.
HARRISON, J.C.C. (temporarily assigned).
Plaintiff Three L. Corporation brings an action in lieu of prerogative writs pursuant to R. 4:69 to review the decision of the Newark Board of Adjustment denying its application for a use variance *455 to operate a day nursery for a maximum of 30 children at 107-113 Grumman Avenue. Plaintiff is the contract purchaser of the above premises, a 93' x 100' lot with a 2 1/2-family residence and two-car garage, located in a Second Residential District. The building inspector initially denied the permit for this purpose on the grounds that the proposed use is not permitted in the zone. Plaintiff appealed and the board denied its application following a hearing on September 7, 1971 based upon the findings that plaintiff's use would (1) increase traffic congestion, (2) change the residential character of the neighborhood and (3) decrease property values. Involved herein is the application of the zoning law, N.J.S.A. 40:55-39.
The Newark zoning ordinance enacted June 9, 1954 applicable to this Second Residential District permits only the establishment of single-family homes, two-and three-family attached dwellings, public schools (elementary and high), private schools not conducted for a profit, not to include nursery schools, museums and libraries, physician's and dentist's offices if located in their homes, and home occupations. The Rabbinical College of New Jersey previously owned and operated the premises under a use variance granted August 1, 1956 to operate the premises as a college.
We first dispose of the issue of whether the ordinance itself unconstitutionally discriminates against private schools conducted for profit so as to deprive their owners of property without due process and of the equal protection of the law. The function of this court in an action in lieu of prerogative writs pursuant to R. 4:69-4 is to review the facts and make independent findings thereon. Appellate courts, not trial courts, generally should rule on issues of constitutionality. Chalmers v. Chalmers, 117 N.J. Super. 474, 478 (Ch. Div. 1971). The constitutional validity of the distinction between profit and nonprofit private day schools under N.J.S.A. 40:55-33.1 has already been upheld in this State in St. Cassian's Catholic Church v. Allen, 77 N.J. Super. 99 (Law Div. 1962), rev'd on other grounds *456 40 N.J. 46 (1963), which interpretation has been iterated in Tp. Com., Denville v. Bd. of Ed., Morris Cty, 59 N.J. 143 (1971).
As the protection of the statute does not apply to the type of school involved here, the vehicle for the accommodation of zoning with individual situations is either a special exception if provided for in the ordinance, or a variance as authorized in N.J.S.A. 40:55-39. Special reasons, public good, and purpose of the ordinance are to be considered in determining, as we must here, whether the local board soundly exercised its discretion. See Roman Catholic Diocese of Newark v. Ho-Ho-Kus, 47 N.J. 211, 217 (1966).
A private day nursery thus being unauthorized in a Second Residential District, a variance is sought under N.J.S.A. 40:55-39, providing in pertinent part as follows:
The board of adjustment shall have the power to:

* * * * * * * *
d. Recommend in particular cases and for special reasons to the governing body of the municipality the granting of a variance to allow a structure or use in a district restricted against such structure of use. Whereupon the governing body or board of public works may, by resolution, approve or disapprove such recommendation. * * *
No relief may be granted or action taken under the terms of this section unless such relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance.
Two critical findings are required by statute: (1) an affirmative finding that "special reasons" "in particular cases" exist; and (2) negative findings applicable in all zoning relief situations that the "relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance." The applicant is required to supply competent and credible evidence to apprise the board of the nature of the zoning burden sought to be alleviated and to demonstrate that the statutory requirements have been fulfilled. Tomko v. Vissers, 21 N.J. 226, 238 (1956).
*457 "Special reasons" is a flexible concept that may be broadly defined by the purposes of zoning, such as health, morals or the general welfare, set forth in N.J.S.A. 40:55-32. De Simone v. Greater Englewood Housing Corp., 56 N.J. 428, 440 (1970); Ward v. Scott, 11 N.J. 117 (1952). The court in Bonsall v. Mendham Tp., 116 N.J. Super. 337, 344 (App. Div. 1971), points out that "No rigid formula has been devised to test a valid (d) variance on general welfare grounds and each case must turn upon its own circumstances." The cases in this State in which a significant factor has been the contribution of the proposed use to the "general welfare" have all dealt with uses which inherently serve the public good, schools readily fitting into such classification. That activity in itself provides a basis for a finding of "special reasons." Kohl v. Mayor, etc., Fair Lawn, 50 N.J. 268, 279 (1967). The court in Kunzler v. Hoffman, 48 N.J. 277 (1966), dealing with a private profit mental hospital, provides guidelines for circumstances which have been accepted by the courts as "special reasons" within subsection 39(d) and which will be shown to apply to the circumstances in our case: (1) urgent need for the type of facility in question; (2) substantial benefit to public, town, community; and (3) no real or substantial threat to residences.
Relief from a denial of a variance may be had only upon a finding by the reviewing court that the refusal was arbitrary, capricious and unreasonable, amounting to a manifest abuse of discretionary authority. Bonsall v. Mendham Tp., supra, 116 N.J. Super. at 343. My review of the record herein leads me to the conclusion that a sound exercise of discretion required that the board permit the variance and not deny it on untenable grounds. I hold such denial to be arbitrary in view of the evidence presented as follows:
The board cited increased traffic congestion and parking problems as one ground for refusal of the variance. Several objectors at the hearing complained that traffic to and from the school would add to the already congested Weequahic Park exit. However, there was considerable evidence rebutting *458 these assertions. Mr. Jemmott, owner of plaintiff corporation, testified that a two-car garage on the property provides parking accommodations for the resident staff. Inquiries from neighborhood parents suggested that an estimated 10 to 15 children would live within walking distance of the school. Hours of arrival and departure tailored to the individual mother's working schedule would prevent rush hour congestion. If a traffic situation were created, the corporation promised to furnish group transportation. Although residents expressed fears and hypothesized heavier traffic and parking problems, they did not show, nor did the board find, potential "unmanageable congestion," as required by Black v. Montclair, 34 N.J. 105, 114 (1961). In Grate v. Tp. of Springfield, 117 N.J. Super. 130, 143 (Law Div. 1971), the court held that even though one purpose of zoning is to relieve street congestion,
* * * a municipality should not use the zoning power to regulate minor traffic problems in rapidly growing communities, and such powers should be used only to deal with such problems in their major aspects as they affect the entire community or major portion thereof.
The 30-student maximum for the proposed day nursery makes it reasonably certain that there would be no profound effect on community traffic patterns.
Defendant further claims that traffic congestion, coupled with noise of children playing, would destroy the peace and quiet of the area. Plaintiff offered competent, credible and uncontradicted evidence that the regular program, qualified instructors and constant supervision as required by the State would assure the orderly conduct of the children at the school.
The board in addition made a finding that the presence of a day care facility would alter the residential character of the neighborhood by introducing a "commercial development" into a Second Residential District. The record indicates that an organized program conducted by State certified instructors would provide control over undue noise. Although the record shows that every other structure on Grumman Avenue *459 is a private family residence, the board admits that the neighborhood is not totally, but "almost exclusively residential." The ordinance itself authorizes uses other than strictly residential, including schools, museums and libraries, and indeed a school was previously operated on the property in question. The ordinance allows doctor's and dentist's offices as well, undeniably a proprietary use despite the fact that they must be attached to a residence. It should be noted that the character of the structure, i.e., the 2 1/2 family residential appearance would be retained with the nursery school use of the premises, quite similar to the residential appearances of homes used by doctors and dentists for their professional purposes. Thus, from either an educational, economic or esthetic point of view, the requested use does not depart from those envisoned in the zone plan.
Private day care centers should be treated as community facilities rather than arbitrarily classified as proprietary uses, and should be considered as being comparable to elementary or public nursery schools for purposes of zoning. The very nature of the use i.e., educational, gives rise to special reasons pursuant to Kohl v. Mayor, etc., Fair Lawn, supra, 50 N.J. at 279. Additionally, day care center services meet community objectives in much the same manner as other more familiar community institutions such as schools and public nurseries, even though the State did not see fit to make nursery level compulsory. A private nursery school serves, in addition to the educational function, an important social community purpose for mothers. Public nursery schools can be established by a board of education in any school under its control, pursuant to N.J.S.A. 18A:44-1. If a public facility is not provided in the district, the availability of a local private nursery serves a legitimate education need, sanctioned, though not required, by the State.
Child care centers are defined and regulated under N.J.S.A. 18A:70-1 et seq. N.J.S.A. 18A:70-3 provides for establishment by the State Commissioner of Education of standards to govern the education of children cared for in *460 such a facility. The facility must be open for inspection and the certificate may be revoked at any time for good cause. Although a distinction is made under N.J.S.A. 40:55-33.1 between private schools operated for profit and public and private schools whose prime motive is service to the community, it does not follow that a proprietary enterprise in educating and caring for children and relieving working mothers does not also serve the community. Indeed, under the private enterprise system, private corporations such as hospitals, utility companies and transportation carriers, rather than the federal or state governments, are encouraged to fulfill crucial economic and social functions. The fairest disposition of this matter requires a categorization based upon the actual nature and quality of the services rendered, not by the means of fiscal operation, so that society is not arbitrarily deprived of a valuable service.
The record further indicated that the presence of the day school as planned would enhance rather than decrease property values in the area. The 2 1/2-story frame building is in a dilapidated, rat-infested condition, according to the testimony of the objectors. Plaintiff has planned at least $5,000 worth of renovations to bring the building up to state standards. Compliance with state licensing requirements, plus local fire and health regulations, to which plaintiff is committed not only by its own volition but by the mandate of state and local laws, ensures valuable improvement to the neighborhood as against what there is now on the premises. Further, the presence of the nursery would tend to attract younger family units, particularly those with working mothers. The plans to reverse the existing dilapidation can do none other than increase the value of this particular property and improve the appearance of the surrounding properties. There is no reason to believe that property values will be decreased in any degree by the substitution of one school for another.
Taking the three reasons stated for denial, and weighing them against the benefits to the neighborhood in the form *461 of pre-school educational opportunities for children and assistance to working mothers by providing a state-approved facility for organized and adequate day care, the court concludes that the evidence offered by the applicant is sufficient to support a finding that the "special reasons" required by statute have been shown.
As to the requirement of a showing of no substantial detriment to the public good, the school, as the record indicates, not only would not be a detriment to the public good but rather would make a contribution to the common weal. "It is fair to say that any community has a strongly presumptive need for elementary schools, whether public or parochial." Trinity Evangelical Lutheran Church v. Board of Adjustment, Morris Plains, 72 N.J. Super. 425, 430 (App. Div. 1962); St. Cassian's Catholic Church v. Allen, supra, 77 N.J. Super. at 118. The need for pre-school facilities today is well recognized. Such facilities should not be proscribed because of doubtful economic considerations. A special report in the Newark Star-Ledger on December 10, 1971, at page 17, indicates that 30% of mothers with children under six are working. Government-funded centers are almost exclusively restricted to children from poverty-level families, private early childhood programs are available only to the financially well-off, but people in the middle income range have almost no facilities whatsoever. Id., col. 4. We take judicial notice that the neighborhood involved here is within that range. The proposed nursery would tend to fill that very gap for at least some of the people in that neighborhood. A statistical report from the State Department of Education reveals that in the period between 1966 and 1971 the number of approved child day care centers has doubled; the number of children enrolled has increased threefold during the same span. Early Education, State Dept. of Educ., Division of Research, Planning and Devt., vol. 3, No. 1 (Nov. 1971).
Our Legislature, in its preamble to the Nonpublic Elementary and Secondary Education Act, L. 1971, c. 336 *462 (N.J.S.A. 18A:58-59 to N.J.S.A. 18A:58-67), voices its strong policy in favor of nonpublic facilities which have invaluably assisted the State in dealing with its educational and welfare financial crises. Parents who send their children to private schools are recognized as contributing to the public welfare; I find that for parents to use a private pre-school facility as here proposed likewise eases the State's burden in allocating limited funds for education. Equally significant is the relief provided to a city severely strapped for funds. I specifically hold, as a matter of law in light of public policy and settled interpretations of the zoning statute, that the proposed privately operated day nursery would provide children with an organized program in accordance with the State Department of Education requirements and constitutes a "special reason" adequate to meet that requirement of N.J.S.A. 40:55-39(d) without in any way serving as a detriment to the public welfare or frustrating the original purpose of the zoning plan.
Plaintiff's contention that it is entitled to zoning approval for its proposed use by virtue of the variance under which the former owner was operating, on the basis that the prior variance runs with the land, is untenable. Only a nonconforming use is protected by the continuance theory. Kirsch Holding Co. v. Borough of Manasquan, 111 N.J. Super. 359 (Law Div. 1970), rev'd on other grounds 59 N.J. 241 (1971).
For the reasons stated herein the action of the board of adjustment denying the application for a variance is reversed. Judgment will be entered in this action in favor of plaintiff.