219 N.J. Super. 512 (1987)
530 A.2d 839
L.I.M.A. PARTNERS, A NEW JERSEY PARTNERSHIP; VIDEO RENTALS, INC. AND ATLANTIC SATELLITE COMMUNICATIONS, INC., NEW JERSEY CORPORATIONS, PLAINTIFFS-RESPONDENTS-CROSS-APPELLANTS,
v.
THE BOROUGH OF NORTHVALE; BOROUGH OF NORTHVALE ZONING OFFICER GARY DELMORO; MAYOR AND COUNCIL OF THE BOROUGH OF NORTHVALE, DEFENDANTS-APPELLANTS, AND THE BOARD OF ADJUSTMENT OF THE BOROUGH OF NORTHVALE, DEFENDANT-CROSS-RESPONDENT.
L.I.M.A. PARTNERS, A NEW JERSEY PARTNERSHIP, PLAINTIFF-RESPONDENT-CROSS-APPELLANT,
v.
THE BOROUGH OF NORTHVALE, AND THE MAYOR AND COUNCIL OF THE BOROUGH OF NORTHVALE, DEFENDANTS-APPELLANTS, AND BOARD OF ADJUSTMENT OF THE BOROUGH OF NORTHVALE, DEFENDANT-CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted January 27, 1987.
Decided August 12, 1987.
*513 Before Judges MICHELS, SKILLMAN and LANDAU.
*514 Richard D. Kelly, attorney for appellants Borough of Northvale, Borough of Northvale Zoning Officer, Gary Del Moro, and Mayor and Council of the Borough of Northvale.
Robert M. Zweiman, attorney for respondents cross-appellants L.I.M.A. Partners, Video Rentals, Inc., Atlantic Satellite Communications, Inc.
Leon B. Savetsky, attorney for cross-respondent Board of Adjustment of the Borough of Northvale.
The opinion of the court was delivered by SKILLMAN, J.A.D.
This appeal involves the denial by defendant Board of Adjustment of the Borough of Northvale (the Board) of an application by plaintiff L.I.M.A. Partners (LIMA) for a use variance. It also involves several issues as to the interpretation and validity of Northvale's zoning ordinance.
Plaintiffs are affiliated companies involved in the satellite communications field. Plaintiff LIMA owns two properties in Northvale. One property, located on Pegasus Avenue, is occupied by an existing communications facility, which LIMA leases to plaintiff Atlantic Satellite Communications, Inc. LIMA proposes to construct a second facility on its other property located on Union Avenue.
Plaintiffs' communications business involves the receipt and transmission of signals from the earth to satellites. To conduct this business, plaintiffs use satellite dish antennas. These antennas are approximately 35 feet in diameter and 35 feet in height. Programs are beamed to a satellite through the dish antennas and then sent from the satellites to subscribers who have the capability of receiving the signals at home. Plaintiffs also use the satellite dish antennas to transmit programs to television stations throughout the country, to receive transmissions from satellites of live sporting events and to service retailers who use the system for consumer credit reports.
*515 Both of LIMA's properties in Northvale are located in a light industrial zone in which specified industrial uses are permitted. Dish antennas are not expressly prohibited in this zone. However, the parties agree that the zoning indirectly prohibits dish antennas by failing to list them as a permitted use and by expressly stating that all uses not permitted are prohibited.
In 1981 the Board granted a use variance and site plan approval for the erection of two dish antennas on the Pegasus Avenue property and in 1983 it granted a variance and site plan approval for a third dish at that location. However, Atlantic Satellite Communications found it necessary to bring onto the property an additional portable dish antenna, which it rented from plaintiff Video Rentals, Inc., in order to test satellites and other equipment. In February 1984, the Northvale zoning officer ordered plaintiffs to cease use of the portable antenna on the grounds that it was not a permitted use in the zone and was not authorized by either of the variances previously granted.
Plaintiffs filed a prerogative writ action attacking this order. They contended among other things that portable antennas are a permitted accessory use in the zone, that the regulation of dish antennas is preempted by the Federal Communications Act, 47 U.S.C. § 151 et seq., and that the Northvale zoning ordinance, as interpreted by Northvale's zoning officer, violates the First Amendment. Northvale counterclaimed to enjoin plaintiffs from placing dish antennas on any of their properties without the prior approval of the Board.
After filing this lawsuit, plaintiffs also appealed the zoning officer's order to the Board. However, the Board affirmed the Zoning Officer's determination that portable dish antenna are not a permitted accessory use in the light industrial zone. By supplemental complaint, plaintiffs also challenged this determination.
Plaintiffs' second lawsuit arises out of their efforts to develop a second communications facility on Union Avenue. This *516 site consists of 7.65 acres of vacant land located approximately 1500 feet from the existing facility on Pegasus Avenue. Plaintiffs' development plans for this site would comply with the applicable bulk requirements in the zone.
Plaintiffs applied for a use variance to permit the erection of dish antennas on the Union Avenue property. This application was denied, based primarily on the Board's concerns that the radiation effects of microwaves pose a health hazard.
Plaintiffs then filed a complaint in lieu of prerogative writ which alleged that the planned erection of dish antenna on the site was a permitted accessory use and, in the alternative, that the denial of plaintiffs' application for a use variance should be reversed because it was arbitrary, capricious and unreasonable. Plaintiffs also challenged the constitutionality of Northvale's zoning ordinance, insofar as it had been construed to prohibit the erection of dish antennas, on essentially the same grounds asserted in the suit relating to the Pegasus Avenue property.
On September 24, 1984, the trial court remanded this matter to the Board with a direction that they "consider only zoning evidence and issues" and "exclude and not consider any evidence or issues with respect to radiation or radiation health issues." After rehearing the matter, the Board again denied the variance application. Several members of the Board expressed "aesthetic" concerns as the basis for the denial, although the Board's resolution simply recites in conclusionary language that the statutory prerequisites for the grant of a use variance have not been met.
By order dated February 8, 1985, the Pegasus Avenue and Union Avenue lawsuits were consolidated and the part of the consolidated cases challenging the constitutionality of Northvale's zoning ordinance was scheduled for trial.
The case was tried over three days in March 1985 and the trial court decided the matter by oral opinion on April 11, 1985. The trial court affirmed the Board's determination that dish antennas are not a permitted accessory use in the light industrial *517 zone. It also affirmed the Board's denial of plaintiffs' application for a use variance with respect to the Union Avenue property. However, the trial court concluded that Northvale's zoning ordinance violates the First Amendment by totally prohibiting the erection of dish antennas in Northvale. A judgment was entered reflecting these determinations and directing Northvale to permit plaintiffs to use a single portable dish antenna on the Pegasus Avenue property and to install and use six dish antenna on the Union Avenue property.
Northvale appeals and plaintiffs cross-appeal from the parts of the judgment affirming the decisions of the Board.
We affirm the part of the trial court's judgment which declares that dish antennas are not a permitted accessory use in the zone where plaintiffs' properties are located. However, the trial court's findings of fact and conclusions of law are inadequate to enable us to pass upon the part of the judgment affirming the Board's denial of a use variance for the Union Avenue property. Moreover, the Federal Communications Commission adopted a new regulation during the pendency of this appeal which preempts local zoning restrictions of dish antennas under certain circumstances. In our view, the trial court should consider the impact of this regulation upon the validity of Northvale's zoning ordinance before we consider its constitutionality. The trial court also failed to consider all relevant factors in concluding that Northvale's prohibition against dish antennas violates the First Amendment. Accordingly, we conclude that the case must be remanded to the trial court for reconsideration of its conclusions and amplification of its opinion in these respects.

I
The following accessory uses are permitted in the light industrial zone in which plaintiffs' properties are located:
(1) Off-street parking.
(2) Fences or fence walls.

*518 (3) Signs.
(4) Garages.
(5) Storage buildings.
(6) Buildings used for the purpose or processing or assembling of goods.
(7) Employee cafeterias.
(8) Open storage of motor vehicles when screened by a buffer zone in accordance with the requirements of this ordinance.
Clearly, neither satellite dish antennas nor any similar use is included on this list of permitted accessory uses.
Nevertheless, plaintiffs urge that because other common accessory uses, such as ordinary television and radio antennas, are not listed, the court should read into the ordinance a provision that any use "customarily incident to the permitted use" is a permitted accessory use. We recognize that such provisions are commonly found in zoning ordinances. See, e.g., State v. P.T. & L. Const. Co., Inc., 77 N.J. 20, 25 (1978); Wright v. Vogt, 7 N.J. 1, 5 (1951); Skinner v. Zoning Bd. of Adjustment, Cherry Hill Tp., 80 N.J. Super. 380, 384 (App.Div. 1963). However, there is no statutory compulsion upon a municipality to authorize accessory uses by means of such open-ended language rather than simply listing specific permitted accessory uses. Furthermore, zoning ordinances which contain general authorizations for accessory uses often impose other limitations upon the scope of these uses. For example, the ordinance involved in the P.T. & L. case not only required that any accessory use be "customarily incident to a permitted use" but also "subordinate to the main permitted use" and "not in violation of the provisions set forth hereafter." 77 N.J. at 25. Therefore, we are hesitant to read into the Northvale zoning ordinance any broader authorization for accessory uses than is actually set forth therein.
Furthermore, even assuming that the Northvale zoning ordinance may be read to impliedly authorize some incidental uses which are not specifically enumerated, see Wright v. Vogt, supra, we agree with the trial court that dish antennas are a primary rather than an accessory use of plaintiffs' properties. *519 Cf. Charlie Brown of Chatham, Inc. v. Bd. of Adjustment, Chatham Tp., 202 N.J. Super. 312, 324 (App.Div. 1985) (an accessory use "... must be one which is subordinate and minor in significance"). Physically, the dishes are large, conspicuous structures. Functionally, they are integral, important parts of the primary intended use of the properties, which is as communications facilities involved in transmitting and receiving a variety of television programs from earth to space satellites. Therefore, the trial court properly determined that the dishes constitute a "main" intended use of plaintiffs' properties which is not permitted as an accessory use in the light industrial zone.

II
A Board of Adjustment is authorized to grant a use variance only for "special reasons." N.J.S.A. 40:55D-70d. Furthermore, the Board must find that "... such variance can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70.
In acting upon an application for a variance, a Board of Adjustment must specifically set forth its factual findings and conclusions of law. Commons v. Westwood Zoning Bd. of Adjustment, 81 N.J. 597, 610 (1980). And when the action of a municipal land use agency is challenged in a prerogative writ action, a trial court must make specific factual findings and conclusions of law to support its decision. Howland v. Freehold, 143 N.J. Super. 484 (App.Div. 1976), certif. den. 72 N.J. 466 (1976).
The part of the Board's resolution denying plaintiffs' application for a use variance states:
... the Board has determined that special reasons do not exist for the relief sought by the applicant and that the variance requested cannot be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the Zone Plan and Zoning Ordinance of the Borough of Northvale.
*520 This statement is merely conclusionary and includes no specific factual findings relating plaintiffs' development proposal to the statutory criteria. The transcript of proceedings before the Board contains statements of individual members that the dish antennas are aesthetically displeasing, but such statements are an inadequate substitute for appropriate findings of fact and conclusions of law.
In affirming the Board's denial of a use variance, the trial court stated as follows:
... this use is permissible ... only on the basis of the considerations of the affirmative and negative criteria by a Board of Adjustment and permission granted by the Board in accordance with the code requirements and the standards set forth in the Municipal Land Use Law.
Now, the Board in this case, decided, by a split vote, not to grant the use variance.
By traditional and regular land use laws, looking at the record and looking at the 2 sides to the coin, you can not find or I can't find that the Board was arbitrary, unreasonable and capricious in their actions in this regard.
So I think that the Board ... acted within the parameters of the authority given to it by statute. .. .
In seeking a use variance, plaintiffs claimed that the use of their property for dish antennas would serve a regional public need, that their property could not be developed for other economically feasible uses, that dish antennas were a use peculiarly fit for this location and that dish antennas would be compatible with other uses permitted in the zone. See Charlie Brown of Chatham, Inc. v. Bd. of Adjustment, Chatham Tp., supra, 202 N.J. Super. at 328-330; Yahnel v. Jamesburg Bd. of Adjustment, 79 N.J. Super. 509 (App.Div. 1963), certif. den. 41 N.J. 116 (1963). Plaintiffs were entitled to have the Board and the trial court specifically consider these claims. Furthermore, this court requires specific findings of fact and conclusions of law with respect to these claims in order to properly perform its reviewing function. Therefore, we remand the case for this purpose.

III
Plaintiffs contended before the trial court that the application of local zoning to satellite dish antennas was preempted *521 by the Communications Satellite Act of 1962, 47 U.S.C. 701 et seq., an amendment to the Federal Communications Act. However, since there was no section of the Act or regulation adopted by the Federal Communications Commission dealing specifically with local zoning, plaintiffs were limited before the trial court to arguing that the federal legislation demonstrated a "dominant federal interest" in satellite communications and that a municipality therefore could not adopt zoning which would "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." The trial court rejected this argument.
Subsequent to the trial court decision, the Federal Communications Commission adopted a regulation dealing specifically with federal preemption of local zoning. The regulation, which is entitled "Preemption of Local Zoning of Earth Stations," reads as follows:
State and local zoning or other regulations that differentiate between satellite receive-only antennas and other types of antenna facilities are preempted unless such regulations:
(a) Have a reasonable and clearly defined health, safety or aesthetic objective; and
(b) Do not operate to impose unreasonable limitations on, or prevent, reception of satellite delivered signals by receive-only antennas or to impose costs on the users of such antennas that are excessive in light of the purchase and installation cost of the equipment.
Regulation of satellite transmitting antennas is preempted in the same manner except that state and local health and safety regulation is not preempted. [47 C.F.R. § 25.104].
This regulation does not preempt all local zoning regulation of satellite dish antennas. Rather, preemption may only occur where the local regulation "differentiates" between satellite dish antennas and "other types of antenna facilities." Northvale's zoning ordinance does not expressly permit or prohibit any kind of antennas in the light industrial zone where plaintiffs' properties are located. However, the record indicates that there are some antennas in the zone, which have been either authorized by use variance as in the case of plaintiffs' dish antennas on Pegasus Avenue or simply informally permitted *522 without express authorization. Therefore, it cannot be determined from the face of Northvale's zoning ordinance whether Northvale "differentiates" in its land use regulation between satellite antenna and other antenna facilities and, if so, whether such difference in treatment is justified on "health," "safety" or "aesthetic" grounds. Rather, these determinations must be made by the trial court based upon the full record and, if necessary, supplementation of that record. Therefore, we conclude that a remand is necessary to afford the trial court an opportunity to consider the impact of adoption of this regulation upon the present controversy. See Minars v. Rose, 123 App.Div.2d 766, 507 N.Y.S.2d 241 (App.Div. 1986).

IV
"The power of local governments to zone and control land use is undoubtedly broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life in both urban and rural communities." Schad v. Mt. Ephraim, 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981). However, "when a zoning law infringes upon a protected liberty, it must be narrowly drawn and must further a sufficiently substantial government interest." Ibid.; see also Young v. American Movie Theatres, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976).
In Metromedia, Inc. v. San Diego, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), the Court determined the constitutionality of a zoning ordinance imposing substantial limitations upon the erection of billboards. In his opinion for a plurality of the Court, Justice Powell stated:
Billboards, then, like other media of communication, combine communicative and noncommunicative aspects. As with other media, the government has legitimate interests in controlling the noncommunicative aspects of the medium, Kovacs v Cooper, supra, but the First and Fourteenth Amendments foreclose a similar interest in controlling the communicative aspects. Because regulation of the noncommunicative aspects of a medium often impinges to some degree on the communicative aspects, it has been necessary for the courts to reconcile the government's regulatory interests with the individual's right to expression.

*523 "`[A] court may not escape the task of assessing the First Amendment interest at stake and weighing it against the public interest allegedly served by the regulation.'" Linmark Associates, Inc. v Willingboro, 431 US 85, 91, 52 L Ed 2d 155, 97 S Ct 1614 [1617] (1977), quoting Bigelow v Virginia, 421 US 809, 826, 44 L Ed 2d 600, 95 S Ct 2222 [2235] (1975). Performance of this task requires a particularized inquiry into the nature of the conflicting interests at stake here, ... [Id. at 502, 101 S.Ct. at 2890].
Weighing these conflicting interests, the Court concluded that the San Diego ordinance was consistent with the First Amendment insofar as it applied to billboards carrying commercial advertising but invalid as applied to noncommercial communications.
In City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984), the Court concluded that a municipal ordinance prohibiting the posting of signs was consistent with the First Amendment. In considering the validity of the ordinance, the Court recognized that "... the critical inquiries are whether [the City's interest in improving its appearance] is sufficiently substantial to justify the effect of the ordinance on appellees' expression, and whether that effect is no greater than necessary to accomplish the City's purpose." 466 U.S. at 805, 104 S.Ct. at 2129. The Court concluded that the City had made the requisite showing to uphold its sign ordinance:
The District Court found that the signs prohibited by the ordinance do constitute visual clutter and blight. By banning these signs, the City did no more than eliminate the exact source of the evil it sought to remedy. [Id. at 808, 104 S.Ct. at 2130].
In a case decided before Metromedia and Taxpayers for Vincent, the Supreme Court of New Jersey concluded that a municipal ordinance which prohibited signs in residential neighborhoods, except in limited circumstances, was violative of the First Amendment as applied to political speech. State v. Miller, 83 N.J. 402 (1980). The Court stated in language similar to that found in Metromedia and Taxpayers for Vincent:
To withstand the strict constitutional scrutiny required here, the restriction on signs must be tied to a compelling municipal interest as well as to the uses permitted in a given zone.
* * * * * * * *

*524 [P]reservation of aesthetics and property values is a legitimate end for a municipal zoning ordinance. However, ... the municipality must demonstrate more than a mere desire to preserve property values. It must show that the particular restrictions on signs in fact relate to the stated goal. [83 N.J. at 414-415].
The principles which govern this case are similar to those applied in Metromedia, Taxpayers for Vincent and Miller. Satellite communication facilities, like billboards and signs, are a medium of communication and thus the use of such facilities implicates First Amendment interests. In fact, the primary function of plaintiff's satellite dishes is to accept and transmit signals of television programs and sporting events. Hence, those facilities are entitled to the same protection under the First Amendment as other television broadcasting facilities. See Schad v. Mt. Ephraim, supra, 452 U.S. at 65, 101 S.Ct. at 2180 ("[e]ntertainment, as well as political and ideological speech, is protected; ... programs broadcast by radio and television, ... fall within the First Amendment guarantee"); see also Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 386, 89 S.Ct. 1794, 1804, 23 L.Ed.2d 371 (1969).[1] Furthermore, the dishes involved in this case, like billboards and signs, may be aesthetically displeasing in many settings. Thus, they may be appropriately subject to regulation through zoning. We would have no hesitancy in concluding, for example, that such dishes *525 could be prohibited in most residential zones and also in some commercial and industrial zones, without violating the First Amendment. Furthermore, even in zoning districts where such facilities must be permitted, they may be subject to reasonable regulation in order to minimize any adverse aesthetic impact. The determination whether such facilities must be permitted in a zone and, if so, the regulations to which they may be subject, requires that consideration be given to the nature of the community, the other uses permitted in the zone, the existing uses in the surrounding area, the alternative means available for satellite transmission and reception and any other circumstances which may be pertinent in reconciling "... the government's regulatory interests with the individual's right to expression." Metromedia, Inc. v. San Diego, supra, 453 U.S. at 502, 101 S.Ct. at 2890.
One interest asserted by Northvale to justify the prohibition against satellite dishes is alleged health hazards resulting from radiation emissions. However, the trial court properly found any such health concerns to be preempted by the Radiation Protection Act, N.J.S.A. 26:2D-1 et seq.[2] One section of this Act provides that "[n]o ordinance, resolution or regulation concerning unnecessary radiation adopted by any municipality, county or local board of health shall be effective until a certified copy of such ordinance or regulation has been submitted to the [Commission on Radiation Protection] and approved by the [Commissioner of Environmental Protection]." N.J.S.A. 26:2D-17. There is no indication that Northvale's *526 zoning ordinances were approved pursuant to this section. Therefore, if Northvale's prohibition against satellite dishes actually was addressed to radiation health concerns, it would be invalid due to the municipality's failure to secure the statutorily required approval.[3]
A second interest asserted by Northvale to justify its prohibition against satellite dishes is aesthetics. The trial court recognized that aesthetics could constitute a sufficient local interest to prohibit such dishes, but found that the impact would be minimal in the area in question:
The issue then is does this further the substantial governmental interest in keeping this communication facility out of the industrial zone because of the aesthetic, negative aesthetic impact?
There is a negative aesthetic impact. The evidence shows it's minimal because it's surrounded by industrial uses. It's in a low, swampy area. It does negatively, to some extent from the evidence in the case, impact adversely on the residential uses which are higher up and look down on it, according to the testimony of Mr. Lacz and according to the lady on the Board of Adjustment who went out and took her own survey walking around the yards and looking down at the Pegasus Avenue facility and looking out on how it would look if and when this facility was built on Union Street.
But my finding in the case, based on the evidence here is that that is not that kind of substantial impact, that kind of negative impact that would justify completely prohibiting a protected first Amendment activity.
These factual findings are amply supported by the record. The uses permitted in the zone where plaintiffs' properties are located include research laboratories, offices, warehouses, publishing houses, printing firms, and facilities for manufacturing by distillation, fabrication, assembling or other handling of products for industrial sale. The actual dominant use in the immediate vicinity of the Union Avenue property is warehouses. Most significantly, the Pegasus Avenue site, which is located 1500 feet from the proposed Union Avenue site, is already occupied by three dish antennas previously authorized by use variances.
*527 However, plaintiffs' dish antennas are different in one significant respect from billboards and certain other structures which may enjoy First Amendment protection. A message on a billboard or sign, see Metromedia, Inc., or a program of live entertainment, see Schad v. Mount Ephraim, supra, is directly transmitted to the recipient at the same location as the medium of communication. Therefore, if local zoning forces a facility used for such communications to relocate, the availability of information or entertainment may be restricted. In contrast, the record indicates that plaintiffs' facilities broadcast to a geographically widespread area. Therefore, if plaintiffs' facilities were required to locate somewhere other than Northvale, it appears that plaintiffs' satellite communications would still reach essentially the same audience.
The Court has recognized that one relevant factor in determining whether zoning violates the First Amendment is the availability of "adequate alternative channels of communication." Schad v. Mt. Ephraim, supra, 452 U.S. at 76, 101 S.Ct. at 2186; see also Young v. American Movie Theatres, supra, 427 U.S. at 62-63, 96 S.Ct. at 2448. The Court also has recognized that "[e]ach method of communicating ideas is `a law into itself' and that law must reflect the `differing natures, values, abuses and dangers' of each method." Metromedia, Inc. v. San Diego, supra, 453 U.S. at 527, 101 S.Ct. at 2902. If it were shown that the probable practical effect of prohibiting plaintiffs from erecting dish antennas in Northvale would be that their communications facility could not operate, or that the audience it could reach would be different, we would agree with the trial court that Northvale's zoning ordinance violates the First Amendment. On the other hand, if it were shown that there are other available locations on which plaintiffs' facilities could be more suitably located and still provide essentially the same communications services, then the exclusion of those facilities from Northvale would not violate any First Amendment rights of plaintiffs or those who benefit from their services. Cf. Gouge v. City of Snellville, 249 Ga. 91, 287 S.E.2d 539, *528 541 (Sup.Ct. 1982). The trial court made no findings of fact on this vital issue. Therefore, a remand is required for this purpose.
Accordingly, we affirm the part of paragraph 5 of the judgment on appeal which affirms the Board's decision that dish antennas are not an accessory use in the light industrial zone where plaintiffs' properties are located and the part of paragraph 6 which declares that the Board is preempted by State law from consideration of health issues relating to radiation and microwaves. In all other respects the judgment is reversed and the case is remanded to the trial court for further proceedings in conformity with this opinion. Jurisdiction is not retained.
NOTES
[1] Northvale suggests that the communications made through plaintiffs' facilities should be viewed as "commercial speech" because plaintiffs are profit making entities. However, it is the content of a communication, rather than the interest of the party who transmits it, which determines whether it is treated as commercial or noncommercial speech. "Were it otherwise, newspapers, radio stations, movie theaters and producers  often those with the highest interest and the largest stake in a First Amendment controversy  would not be able to challenge governmental limitations on speech as substantially overbroad." Metromedia, Inc. v. San Diego, supra, 453 U.S. at 504 n. 11, 101 S.Ct. at 2890 n. 11. Although some of the material transmitted through plaintiffs' facilities such as credit checks may be considered commercial communications, the primary use of the facilities is for noncommercial communications such as sporting events and entertainment programs. Therefore, we reject Northvale's suggestion that this should be viewed as a commercial speech case.
[2] Northvale asserts in the conclusion to its brief that the trial court erred in holding that the municipality was preempted from considering the alleged "health aspects" of the regulation of dish antenna. However, none of the points in the argument section of its brief even mentions the preemptive language of the Radiation Protection Act. Therefore, we consider Northvale to have abandoned the part of its cross appeal which challenged the trial court's determination that the Board was preempted from considering any possible adverse health effects of plaintiffs' proposed facilities. In any event, any such argument would be clearly lacking in merit.
[3] We note that in any event the record contains no competent evidence that plaintiffs' facilities would pose any health hazard.