286 N.J. Super. 440 (1996)
669 A.2d 833
SUN COMPANY, INC., A PENNSYLVANIA CORP., PLAINTIFF-RESPONDENT,
v.
ZONING BOARD OF ADJUSTMENT OF BOROUGH OF AVALON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 11, 1995.
Decided January 12, 1996.
*442 Corino & Dwyer, attorneys for appellant (Louis C. Dwyer, Jr., on the brief).
Brandt, Haughey, Penberthy, Lewis & Hyland, attorneys for respondent (William F. Hyland, Jr., on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
The Zoning Board of Adjustment of the Borough of Avalon (Zoning Board) appeals from the decision of the Law Division, which rejected the Zoning Board's interpretation of an ordinance regarding the number of principal uses permitted on one property. We reverse.
Initially, the Planning Board of Avalon determined that it did not have jurisdiction to hear the application by Sun Company, Inc. (Sun) for site plan approval to redevelop a piece of property as a combination gas station and convenience store. Sun then applied to the Zoning Board pursuant to N.J.S.A. 40:55D-70b for an interpretation of the zoning ordinance. The Zoning Board determined that under its zoning ordinance two principal uses were not allowed on the same property. Thereafter, and without applying for a variance, Sun instituted an action in lieu of prerogative writ to challenge the Zoning Board's decision. The Law Division judge reversed the Zoning Board's determination, stating that the ordinance allowed two principal uses to co-exist on one lot. The Zoning Board now appeals that determination.
Sun owns an existing gas station on Ocean Drive in Avalon, in a B-1A business district. The property presently is developed with a gas station and a three-bay service building occupying approximately 1,832 square feet of the 24,250 square foot lot. Sun *443 proposes to demolish the entire existing gas station and build a new fueling area, with a pump island and a canopy, and to construct a mini-mart store as part of the facility. It also seeks to increase the area devoted to signs from 99 to approximately 220 square feet.
The parties agree that, standing alone, the gas station and the mini-mart each would constitute a permitted principal use as such principal uses are itemized in the B-1A zone regulations. The sole issue on this appeal is whether the combination of what would be two separate principal uses is permitted on the same lot without the necessity of a variance.
The business B-1A district requires that each individual store have a minimum of 900 square feet and a minimum frontage of 16 feet on any street. Only specified uses permitted in the zoning ordinance are allowed in the district. The itemization of those uses include single-family and two-family dwellings, as well as buildings for essential services, schools, libraries, churches, and stores and shops for the conduct of any lawful retail business. In addition, banks, theaters, offices, restaurants, and similar community services are permitted. Garages and filling stations are allowed, subject to certain itemized restrictions. Finally, the principal use category includes "Convenience stores and supermarkets."
Accessory uses permitted in the B-1A district are:
(a) Private garages and other accessory uses and structures which are customarily incidental to the principal use and do not include any activity normally conducted as a business. No accessory structure shall have cooking or toilet facilities installed therein or be used for dwelling purposes. .. . [emphasis supplied].
Signs are subject to specific regulations set forth in the zoning ordinance.
The applicability of the zoning regulations is expressed in general terms in § 27-5.1 of the ordinance, entitled "Conformance," as follows:
a. Except as otherwise provided in the case of non-conforming uses, no building or land shall hereafter be used or occupied and no building or part thereof shall be *444 erected, moved or altered unless in conformance with the regulations herein specified for the district in which it is located.
b. No land located in a business district shall be used for commercial purposes unless said business is operated from a building and said building conforms to all applicable zoning regulations for the district in which it is located.
Although the ordinance is permissive, the usual rule of construction of zoning ordinances is that where a use is not expressly provided for it is prohibited. See, e.g., L.I.M.A. Partners v. Borough of Northvale, 219 N.J. Super. 512, 517-519, 530 A.2d 839 (App.Div. 1987); State v. Farmland-Fair Lawn Dairies, 70 N.J. Super. 19, 23, 174 A.2d 598 (App.Div. 1961), certif. denied, 38 N.J. 301, 184 A.2d 417 (1962). See also Cox, New Jersey Zoning & Land Use Administration § 5-2.3, at 83-84 (1995).
The ordinance does not define the term "principal use." The ordinance does indicate that if an undefined ordinance term is defined in the state statutes, the term in the zoning ordinance is intended to have the same meaning set forth in the statute's definition, "unless a contrary intention is clearly expressed in context." The Municipal Land Use Act, N.J.S.A. 40:55D-1, et seq., does not provide a definition for "principal use."
However, the use of the adjective "principal" as a modifier for the noun "use" in the ordinance aids in ascertaining the meaning of the use restrictions. All of the districts, including the B-1A district, authorize both "principal uses" and "accessory uses." The term "accessory use" is defined in the ordinance as a "subordinate use or structure, the purpose of which is incidental to that of the main use or structure and on the same lot therewith." (emphasis added). This, as well as the use of the singular article modifying the term, suggests that "principal use" means the primary or "main use" of the property, which comports with the traditional and plain meaning of the term "principal." See Webster's Third New International Dictionary, Unabridged, 1802 (1971) (defining "principal" as "first," "chief," or "most important"); see also Ientile, Inc. v. Zoning Bd. of Adj., 271 N.J. Super. 326, 329, 638 A.2d 882 (App.Div. 1994) (noting that the ordinance reviewed therein defined "principal use" as "[t]he main purpose *445 for which a lot, structure or building, or a portion thereof is used" (emphasis added)).
Whether interpreting a statute or a zoning ordinance, we seek a reading that "will not justly turn on literalisms, technisms[,] or the so-called formal rules of interpretation; it will justly turn on the breadth of the objectives of the legislation and the common sense of the situation. [T]he spirit of the legislative direction prevails over its terms." New Jersey Builders, Owners & Managers Ass'n v. Blair, 60 N.J. 330, 339, 288 A.2d 855 (1972) (citations omitted) (second alteration in original). See State v. Mair, 39 N.J. Super. 18, 22-23, 120 A.2d 487 (App.Div. 1956).
The purpose of the ordinance, as provided therein, is:
[T]o guide and regulate the orderly growth and development of the Borough of Avalon in accordance with a duly enacted comprehensive plan; to protect the established character and social and economic well-being of the community; to secure safety from fire, panic and other dangers; ... and to these ends, to regulate heights, design, appearance, number of stories and size of buildings and other structures as well as their placement on the land.
The "conformance" section, previously quoted, seeks to restrict uses only to those specified within the ordinance. As noted, each zone listed in the ordinance specifies both principal and accessory uses. Even though the zoning ordinance does not expressly state that a lot may have only one principal use or even that a lot may have a principal and accessory use, obviously one lot may have both an accessory and principal use, provided such a use conforms to the ordinance's requirements and the accessory use is an ancillary one. See Wyzykowski v. Rizas, 132 N.J. 509, 626 A.2d 406 (1993); Ientile, Inc. v. Zoning Bd. of Adj., supra, 271 N.J. Super. 326, 638 A.2d 882; L.I.M.A. Partners v. Borough of Northvale, supra, 219 N.J. Super. 512, 530 A.2d 839; Keller v. Westfield, 39 N.J. Super. 430, 436, 121 A.2d 419 (App.Div. 1956). Accessory uses generally are required, as in Avalon's ordinance, to be those which are incidental to the principal use. See Wyzykowski v. Rizas, supra, 132 N.J. at 518-519, 626 A.2d 406; Ientile, Inc. v. Zoning Bd. of Adj., supra, 271 N.J. Super. at 329-330, 638 A.2d 882.
*446 Moreover, Avalon's ordinance states that an accessory use may not be "any activity normally conducted as a business." Hence, the operation of a convenience store would not be an accessory use not only because it is a principal use, but because it is a very different business from the use of a gasoline filling station or garage. In addition, an accessory use generally compliments or relates to the principal use. Not all principal uses compliment other principal uses. Our view that the Avalon zoning ordinance envisions only one principal use to be permitted on a lot is buttressed by our decision in L.I.M.A. Partners v. Borough of Northvale, supra, 219 N.J. Super. 512, 530 A.2d 839, where we indicated that the use of a dish antenna was the primary or "main" use and not an accessory use and, thus, was not permitted as a principal use under the zoning ordinance.
Although individually a gas station and a mini-market or convenience store are listed in the ordinance as principal uses in the B-1A zone, this does not mean that more than one principal use is permitted on one lot without a variance. What Sun is essentially seeking to do is use its property for what could be described as a mixed use.[1]See Wyzykowski v. Rizas, supra, 132 N.J. at 519-521, 626 A.2d 406; Cox, supra, § 10.1, at 177 (1955). Although, as we noted, the statute does not specifically define a principal use, or even refer to a mixed use, the references to the principal use in each zone are in the singular and are proceeded by the definite article. Cf. 3A Williams, American Land Planning *447 Law §§ 74.12-74.14 (1985 Rev.); 2 Rathkopf, The Law of Zoning & Planning §§ 23.01, 23.02[2] (4th ed. 1994). Thus, we are satisfied that the use in Avalon's ordinance of the singular article "the" modifying the term "principal use" reflects an intent that there be but one principal use on the property.
The language of the ordinance, read with the "Interpretation" section of the ordinance (§ 27-7.7), indicating that the zoning regulations are intended "to be the minimum requirements for the promotion of the public health, safety, comfort, convenience and general welfare," buttresses our conclusion that only one principal use is permitted on each property without a variance. To hold otherwise would allow properties to be developed as mixed uses and the provision of the ordinance limiting accessory uses to related uses to be circumvented easily by proposing multiple principal use projects. It hardly could be argued that because a single-family dwelling and a two-family dwelling are principal uses, a developer could put both dwellings on the property if it otherwise met the bulk requirements of the B-1A district.
Likewise, Sun's position would give rise to an argument that a school, restaurant, and a gas station, as well as other principal uses, could exist on the same lot. Such a configuration hardly would comport with usual zoning principles. In summary, the very term principal use means the main, controlling, or primary use on the property, and that such a term connotes one use is in accordance with ordinary principles of statutory construction or common sense application. To agree with Sun's argument, we would have to conclude that a gas station and convenience store were co-principal uses. Such a construction would change the meaning of the word principal and effectively make a principal use a co-equal or multiple use.
Although we reverse the determination of the Law Division, and reinstate the interpretation of the Board of Adjustment, we again note that no variance application was ever submitted by Sun. *448 Obviously, our determination is without prejudice to a future application for a variance.
The determination of the Law Division is reversed.
NOTES
[1] The term "mixed use" generally refers to combining, both individually and collectively, commercial and business uses, as they are defined within the ordinance. See Manalapan Realty v. Township Comm., 140 N.J. 366, 380, 382, 385-386, 658 A.2d 1230 (1995); Wyzykowski v. Rizas, supra, 132 N.J. at 520-521, 626 A.2d 406; see also Moskowitz & Lindbloom, The Illustrated Book of Development Definitions 127 (1981) (defining "mixed use development" as "[t]he development of a tract of land or building or structure with two or more different uses such as, but not limited to, residential, office, manufacturing, retail, public, or entertainment, in a compact urban form"). In establishing various types of land use patterns, municipalities often create different use districts, namely cumulative, exclusive, and mixed. Rohan, Powell on Real Property § 869[1] (revised ed., 1990).