704 A.2d 1371

NEW BRUNSWICK CELLULAR TELEPHONE COMPANY D/B/A COMCAST COMMUNICATIONS, INC., PLAINTIFFS, v. ZONING BOARD OF ADJUSTMENT OF THE BOROUGH OF METUCHEN, DEFENDANT.

Superior Court of New Jersey
Law Division
Middlesex County

Decided January 29, 1997.

562

564

*Warren O. Stillwell*, for the Plaintiff, New Brunswick Cellular Telephone Company d/b/a Comcast Communications, Inc.

*Robert F. Munoz*, Attorney for the Defendant, Zoning Board of Adjustment of the Borough of Metuchen (*Lomurro, Davison, Eastman & Munoz*).

WOLFSON, J.S.C.

## I. *FACTUAL BACKGROUND*

New Brunswick Cellular Telephone Company d/b/a Comcast Communications, Inc., ("Comcast") appeals from a decision of the Zoning Board of Adjustment of the Borough of Metuchen denying its application for a height variance and site plan approval to construct a cellular communications facility consisting of an 83 foot high freestanding monopole and an equipment shelter on the premises known as Block 48.01, Lot 2.01. The property is located in the LI zoning district [1] and is owned and occupied by Tree Top, Inc., a storage and construction business. Presently located on the 113,865 foot site is a storage and trucking terminal facility along with a parking area for the tractor trailer delivery trucks.

On July 7, 1995, the plaintiff applied to the Zoning Board of Adjustment for an interpretation of Section 409(c)(2) of the ordinances of the Borough of Metuchen, together with preliminary and final site plan approval, and for a variance from the height requirements. Hearings on the application were held before the Zoning Board spanning five months. At the initial meeting, plaintiff sought an interpretation that the proposed cellular facility was a public utility and, was therefore, permitted as a conditional use under the ordinance. *See, N.J.S.A.* 40:55D–70(b). The Board determined that it was, but also determined that a variance would

---

[1] The LI zone is a light industrial zone which permits certain conditional uses which include utility installations, including, but not limited to, electrical substations, power transmission lines, telephone exchanges and similar facilities.

still be required, since the cellular tower exceeded the height requirements applicable to the conditional use. *See, N.J.S.A.* 40:55D–70d(3).

At the hearings, testimony was presented by several witnesses on behalf of the applicant that: 1) the site of the proposed facility would be approximately 600 feet away from the nearest adjacent residential area, and that due to existing utility easements in the area, no greater buffer was possible; 2) there were no known health hazards related to the proposed installation inasmuch as the anticipated radio wave emissions would be approximately 1,450 times below that permitted by the New Jersey Administrative Code; 3) an additional tower was needed in the Metuchen area due the large number of telephone users, causing the existing capacity of the cellular system to become overloaded; and 4) the use of cellular transmissions was important to assist local emergency squads, fire departments, the police and the 911 system.

Nonetheless, the application was denied and a resolution memorializing the Board's decision was adopted on December 14, 1996. The Board found that the applicant had failed to demonstrate that the deviation from the requirements of the ordinance was justified,[2] and concluded that the application would adversely impact the Zone Plan and the Master Plan of the Borough of Metuchen.

## II.  *THE STANDARD OF REVIEW*

In reviewing any decision of a zoning board, the court's power is tightly circumscribed.  In recognition of the fact that local officials are "thoroughly familiar with their communities'

---

[2] The Board also based its denial, in part, on the applicant's failure to attempt to locate the cellular tower at other locations within the area targeted on its map.  The Board also found that the applicant failed to demonstrate that the tower was necessary for the convenience of the community or that the benefits would outweigh the detriment.  The Board further found that the proposed tower would pose an eyesore to the small town atmosphere of the Borough of Metuchen and that the applicant failed to satisfy the negative criteria of *N.J.S.A.* 40:55D–70(d).

characteristics and interests and ... are undoubtedly the best equipped to pass initially on such applications for variances," *Ward v. Scott*, 16 *N.J.* 16, 23, 105 *A.*2d 851 (1954), the Board's decisions, when factually grounded, are cloaked with a presumption of validity, which presumption attaches to both the acts and the motives of its members. Public bodies, because of their peculiar knowledge of local conditions, are thus allowed wide latitude in the exercise of the discretion delegated them under Municipal Land Use Law. *N.J.S.A.* 40:55D–1 *et seq.*

So long as there is substantial evidence in the record, the court may not interfere with or overturn the factual findings of a municipal board. Even when doubt is entertained as to the wisdom of the board's acceptance of certain evidence or its rejection of other testimony, there can be no judicial declaration of invalidity absent a clear abuse of discretion by the board. Consequently zoning determinations may be set aside only when the court has determined the decision to be arbitrary, capricious or unreasonable. *Medici v. BPR Co.*, 107 *N.J.* 1, 15, 526 *A.*2d 109 (1987); *Kramer v. Sea Girt*, 45 *N.J.* 268, 296, 212 *A.*2d 153 (1965).

On the other hand, however, a Board's determination or interpretation regarding a question of law is subject to a *de novo* review by the courts, *Grancagnola v. Pl. Bd. of Twp. of Verona*, 221 *N.J.Super.* 71, 75–76, n. 5, 533 *A.*2d 982 (App.Div.1987), since a zoning board has "no peculiar skill superior to the courts" regarding purely legal matters. *Jantausch v. Bor. of Verona*, 41 *N.J.Super.* 89, 96, 124 *A.*2d 14 (Law Div.1956) *aff'd* 24 *N.J.* 326, 131 *A.*2d 881, (1957); *Grancagnola, supra*, 221 *N.J.Super.* at 75–76, 533 *A.*2d 982.

## III. *CONDITIONAL USE VARIANCE UNDER N.J.S.A. 40:55D–70(d)(3)*

*N.J.S.A.* 40:55D–70(d)(3) provides that a "special reasons" variance is required if there is a deviation from a specification or standard pertaining solely to a conditional use. While the pro-

posed cellular tower was found to be a permitted conditional use, the Board required the applicant to apply for a (d)(3) variance since the tower would exceed the height limitation applicable to conditional uses in the LI zone.

■ *Coventry Square v. Westwood Zoning Bd. of Adjustment,* 138 *N.J.* 285, 287, 650 *A.*2d 340 (1994), established the standards for reviewing an application to deviate "from a specification or standard . . . pertaining solely to a conditional use" under *N.J.S.A.* 40:55D–70(d)(3). In developing the standards, the Supreme Court recognized that a conditional use could not be viewed in the same light as uses which are prohibited throughout the zone. Since a conditional use is not prohibited, it need not meet the stringent standards applicable to a d(1) commercial-use variance which the court summarized in *Medici v. BPR Co.,* 107 *N.J.* 1, 9–18, 526 *A.*2d 109 (1987). Still, both the d(1) and the d(3) variances require the applicant prove "special reasons" and satisfy the negative criteria. However, in a d(3) context, the primary focus is not on the use itself, which is permitted, but rather on the extent of the non-compliance with any of the conditions pertaining solely to the conditional use. *Coventry Square, supra,* 138 *N.J.* at 287, 650 *A.*2d 340.

■ Having determined Comcast's proposed tower was a "utility," the Board argues that it was unnecessary to consider the "inherently beneficial" status of the project. *See, Sica v. Bd. of Adj. of Tp. of Wall,* 127 *N.J.* 152, 156, 603 *A.*2d 30 (1992). Instead, referring to *Coventry Square,* the Board determined that the applicant had not proven that the site was "specifically suited" to the proposed use and had failed to consider "other" more suitable locations within the targeted area. While such a burden might arguably be imposed in a d(1) context, it is plainly inapplicable where the applicant's proposed use is permitted or conditionally permitted. *See, Mocco v. Job,* 56 *N.J.Super.* 468, 477, 153 *A.*2d 723 (App.Div.1959) (insufficient showing that particular site *must* be location for the proposed *use* variance); *and see, New Brunswick v. Old Bridge,* 270 *N.J.Super.* 122, 127, n. 3, 636 *A.*2d 588

(Law Div.1993) (applicant's failure to consider alternative, or even more suitable locations has no relevance where special reasons are not grounded in particular suitability but rather are satisfied by inherently beneficial nature of the proposed use); *compare Medici, supra,* 107 *N.J.* at 24, 526 *A.*2d 109 (in a **(d)(1) variance** application special reasons requires proof that "the subject property was particularly suitable for the proposed [prohibited] use"). The burden thus required to obtain or sustain a (d)(1) variance is far more onerous than that which is imposed where the use is permitted, albeit subject to conditions. *Coventry Square, supra,* 138 *N.J.* at 298, 650 *A.*2d 340 (burden of proof required to sustain a use variance is "too onerous" for a conditional use variance). By way of contrast, a conditional-use applicant's inability to comply with some of the ordinance's conditions will often not materially affect the appropriateness of the site for the conditional use. *Coventry Square, supra,* 138 *N.J.* at 297, 650 *A.*2d 340. Thus, the lawful focus for the Board in this case was *not* whether there were other, "more suitable" sites, but rather, whether the appropriateness of the applicant's site was materially affected by a 48 foot height deviation. *Id.* at 298, 650 *A.*2d 340.

Here, the permitted height is 35 feet, whereas the tower as proposed, would be 85 feet. Applying the *Coventry Square* analysis, and considering the inherently beneficial nature of the tower, it cannot reasonably be concluded from the evidence in this record that the 48 foot deviation alone, affected the overall suitability of this site for the proposed facility. Within the same zone, far more onerous industrial uses are permitted, all with substantially greater negative impacts. That the appropriateness of the proposed site would not be materially affected is further buttressed by the fact that the proposed tower will be 600 feet away from the nearest residential area. Finally, because the tower would be obscured from the residential area both by other buildings and by existing trees, the continued suitability of the site cannot reasonably be disputed.

■ While *N.J.S.A.* 40:55D–70(d) does not expressly require a balancing of the positive and negative criteria, where the requested variance involves an inherently beneficial use, our Supreme Court has directed that municipal boards engage in a four step procedure in assessing whether the grant of the variance would cause a *substantial* detriment to the public good. *Sica, supra,* 127 *N.J.* at 164–65, 603 *A.*2d 30. First, the board is required to identify the public interest at stake. Second, it must identify any detrimental effect which it perceives would result if the variance were to be granted. Third, in order to reduce any perceived detrimental effect, the Board must, if practicable, impose reasonable conditions on the use. Finally, the Board must weigh the positive and negative criteria and determine whether, on balance, the grant of the variance would cause a *substantial* detriment to the public good. *Id.* at 165–66, 603 *A.*2d 30.

That a d(3) variance is sought, rather than a use variance under (d)1, is of no moment. Where the proposed use is inherently beneficial, the conditional use variance application is, at a minimum, entitled to the same level of "protective" scrutiny normally afforded to uses which are prohibited. Indeed, if a contrary rule were adopted, a far greater burden would be imposed upon an applicant seeking the less intrusive[3] variance, since the Board would be relieved of its obligation to ameliorate, to the extent achievable through the imposition of reasonable conditions, any detriment anticipated from a variance grant, and from its obligation thereafter to balance the positives and negatives attributable to the proposed use. *Compare, Sica, supra,* 127 *N.J.* at 152, 164–167, 603 *A.*2d 30, *with, Medici, supra,* 107 *N.J.* at 21, 526 *A.*2d 109; *see, New Brunswick Cellular, supra,* 270 *N.J.Super.* at 136, n. 13, 138, 636 *A.*2d 588. As the Supreme Court has noted, the

---

[3] *Compare, Coventry Square, supra,* 138 *N.J.* at 297–98, 650 *A.*2d 340 (conditional use variances need not meet the "stringent" standard applicable to a commercial use variance sought under d(1)), *with Medici, supra,* 107 *N.J.* at 21, 526 *A.*2d 109 (enhanced burden of proof required to reconcile commercial d(1) variance request with legislative omission of proposed use from zone).

balancing procedure "properly" renders it "more difficult" for municipalities to exclude inherently beneficial uses. *See, Sica, supra,* 127 *N.J.* at 166, 603 *A.*2d 30; *see also, New Brunswick Cellular, supra,* 270 *N.J.Super.* at 138, n. 14, 636 *A.*2d 588. Given the heightened judicial scrutiny of municipal attempts to exclude inherently beneficial uses, relieving a municipal board of its amelioration and balancing obligations would thus lead to an anomalous result which would "violate the spirit, if not the precise rationale" of *Sica. New Brunswick Cellular, supra,* 270 *N.J.Super.* at 138, 636 *A.*2d 588.

## A. THE POSITIVE CRITERIA

The term "special reasons" takes it meaning from the general purpose of the zoning laws. *Nynex Mob. Comm. Co. v. Hazlet Tp.,* 276 *N.J.Super.* 598, 608, 648 *A.*2d 724 (App.Div.1994); *Burbridge v. Mine Hill Tp.,* 117 *N.J.* 376, 384, 568 *A.*2d 527 (1990). These "general purposes" are defined in *N.J.S.A.* 40:55D–2. The one most often relied on to prove special reasons in support of a use variance is "promotion of general welfare." However, when a proposed use is "inherently beneficial," the positive criteria are deemed to be met as a matter of law. *Sica, supra,* 127 *N.J.* at 165, 603 *A.*2d 30; *Nynex, supra,* 276 *N.J.Super.* at 608, 648 *A.*2d 724.[4]

---

[4] While "inherently beneficial" uses often fall into the category of non-profit entities which benefit the community, various profit-making ventures have been deemed to be inherently beneficial. Among those commercial uses which have been judicially recognized as being inherently beneficial are private, for-profit senior citizen congregate-care facilities, *Kunzler v. Hoffman,* 48 *N.J.* 277, 288, 225 *A.*2d 321 (1966); *Jayber, Inc. v. Township of W. Orange,* 238 *N.J.Super.* 165, 174–75, 569 *A.*2d 304 (App.Div.1990); a 120–bed nursing home, *Urban Farms, Inc. v. Borough of Franklin Lakes,* 179 *N.J.Super.* 203, 212, 431 *A.*2d 163 (App.Div.), *certif. denied,* 87 *N.J.* 428, 434 *A.*2d 1099 (1981); a private day care nursery, *Three L Corp. v. Newark Board of Adjustment,* 118 *N.J.Super.* 453, 457, 288 *A.*2d 312 (Law Div.1972); and a tertiary sewage treatment plant to serve a commercial trailer park, *Wickatunk Village, Inc. v. Township of Marlboro,* 118 *N.J.Super.* 445, 452, 288 *A.*2d 308 (Ch.Div.1972); *Sica, supra,* 127 *N.J.* at 159, 603 *A.*2d 30 (head-trauma facility); *Nynex, supra,* 276 *N.J.Super.* at 609, 648 *A.*2d

In *Nynex, supra,* the Appellate Division expressly considered whether a cellular communications facility, consisting of antennae located on top of an existing water tower and an equipment shelter, constituted an inherently beneficial use. There the court found that the proposed facility would fill the gaps in service coverage and would improve cellular phone communication and that this, "along with the emergency benefits available through up-to-date cellular communications" was sufficient to meet the inherently beneficial standard. *Id.* at 612, 648 *A.*2d 724. *See also, Yahnel v. Board of Adjustment,* 79 *N.J.Super.* 509, 192 *A.*2d 177, (App.Div.), *certif. denied,* 41 *N.J.* 116, 195 *A.*2d 15, (1963), ("[i]mproved telephonic communications are obviously a subject matter of high relationship to the welfare of the entire community"); *Alpine Tower v. Mayor of Alpine,* 231 *N.J.Super.* 239, 555 *A.*2d 657 (App.Div.1989), ("[t]he regional public benefit derived from plaintiff's communications facility and the need for the proposed new building to house the sensitive modern electronic equipment used in the facility provide additional grounds for ... special reasons."); *Kingwood Twp. Volunteer Fire Co. No. One v. Board of Adjustment of Twp. Of Kingwood,* 272 *N.J.Super.* 498, 503–06, 640 *A.*2d 356 (Law Div.1993) (197–foot tower was inherently beneficial, especially in "situations where immediate communication is critical to safety."); and *New Brunswick Cellular, supra,* 270 *N.J.Super.* at 136–38, 636 *A.*2d 588 (160–foot cellular tower sufficiently promotes "the general welfare of the citizens and businesses of this State to qualify as inherently beneficial."). In describing the benefits inherent in improved cellular phone systems, this court has explained:

> The enhanced ability of police, fire, or other rescue personnel to provide emergency services by virtue of an enhanced transmission range, or immediate, on the scene reporting ... cannot be overstated. Whether it facilitates the rescue of a stranded traveler on a deserted highway, increases business productivity or efficiency, or simply facilitates the exchange of information, ... the proposed facility sufficiently

724 and, *New Brunswick Cellular, supra,* 270 *N.J.Super.* at 136–37, 636 *A.*2d 588 (Law Div.1993) (cellular towers).

promotes the general welfare of the citizens and businesses of this State to qualify
as inherently beneficial.

*New Brunswick Cellular, supra,* 270 *N.J.Super.* at 137, 636 *A.*2d
588.

By failing to identify these regional benefits, or balance them
against any perceived detriment, the Board abdicated its quasi-
judicial responsibilities under law.

### B. THE NEGATIVE CRITERIA

In addition to proof of special reasons, the applicant was re-
quired to satisfy the so called "negative criteria" and to demon-
strate that the variance will not result in *"substantial* detriment to
the public good and will not *substantially* impair the intent and
the purpose of the zone plan and zoning ordinance, (Emphasis
supplied)." *N.J.S.A.* 40:55D–70(d); *Coventry Square, supra,* 138
*N.J.* at 293, 650 *A.*2d 340.

In *Medici, supra,* our Supreme Court required "an en-
hanced quality of proof and clear and specific findings by the
board of adjustment that the variance sought is not inconsistent
with the intent and purpose of the master plan and zoning
ordinance." 107 *N.J.* at 21, 526 *A.*2d 109. However, these
enhanced standards do not apply when the proposed use is
inherently beneficial. *Sica, supra,* 127 *N.J.* at 160–61, 603 *A.*2d
30.

In this case, the Board's limited findings regarding the negative
criteria were: (1) given the size of Metuchen and its small town
atmosphere, the tower would not be aesthetically pleasing to the
residents in the area of the proposed location; and (2) the
application would have a severe negative impact on property
values. Although the absence of any credible evidence regarding
these "findings," would itself warrant reversal of the Board's
action, the Board compounded its error in this case by failing to
weigh these "perceived" negatives against the local and regional
benefits flowing from the inherently beneficial nature of the
proposed use.

## 1. *Aesthetically displeasing*

In this case the Board found that the 83–foot tower would be aesthetically displeasing in the small town atmosphere of Metuchen. The record, on the other hand demonstrated without rebuttal, that: (1) the tower is to be located within the light industrial zone; (2) the view of the equipment shelter at the base of the tower would be hidden by other buildings within the zone; and, (3) the view from the residential zone would be masked by existing trees and other uses in the residential zone.

In *Kingwood, supra,* the Appellate Division gave no credence to the board's conclusion that a proposed tower would constitute a "visual intrusion," since increasing an existing seventy-five-foot antennae to a 197–foot tower (a 122 foot deviation) would be, at most, a "minimal" intrusion on the surrounding community. 272 *N.J.Super.* at 508–09, 640 *A.*2d 356. Here, the proposed tower is only 48 feet greater than the height restriction, is located in an industrial zone, and is buffered from the nearest residential zone by a distance of 600 feet.

While the tower will no doubt be aesthetically displeasing to some of the neighboring residents, had the Board adhered to its quasi-judicial obligation to balance the positive and negative criteria, it could not have reasonably concluded that these detriments *substantially* outweighed the regional benefits of an improved telecommunications service. This is especially so, given Metuchen's own legislative choice to place industrial and residential zones side by side, and to permit towers and other similar utilities in the industrial zone. *See, L.I.M.A. Partners v. Northvale,* 219 *N.J.Super.* 512, 526, 530 *A.*2d 839 (App.Div.1987) (negative impact of satellite communication facility in industrial zone on contiguous residences deemed insubstantial). As cautioned in *Sica, supra,* regional or local institutions recognized as serving the public welfare are "far too important" to be prevented from locating on available, appropriate sites, subject to reasonable safeguards, by the imposition of exclusionary municipal legislation enacted for the sake of preserving the character of a community or some other

equally indefensible parochial interest. 127 *N.J.* at 162, 603 *A.*2d 30, *quoting Roman Catholic Diocese of Newark v. Borough of Ho-Ho–Kus,* 47 *N.J.* 211, 223, 220 *A.*2d 97 (1966).

### 2. *Reduced property values*

The applicant's real estate expert also testified that there would be no negative impact on property values simply because of the tower. The Board found this testimony to be unconvincing. Relying instead on the lay testimony of neighboring residents (who, despite living next to an industrial zone, feared that the added height of the proposed tower would reduce their property values) the Board apparently concluded that the extra 48 feet in height was so detrimental that it would, in and of itself, substantially reduce the property values of homes more than 600 feet away. For its decision to be sustained, it was necessary that the Board ground its conclusions on specific evidence in the record. *Burbridge v. Mine Hill Tp., supra,* 117 *N.J.* at 385, 568 *A.*2d 527. It may not speculate or rely upon the unsubstantiated "fears" of nearby residents as to what "may" occur, *Exxon Co. v. Bernardsville Bd. of Adj.,* 196 *N.J.Super.* 183, 191, 481 *A.*2d 1172 (Law Div.1984), or lawfully base its decisions on the "perceptions" of neighboring residents. *See, L.I.M.A. Partners, supra,* 219 *N.J.Super.* at 520, 530 *A.*2d 839 (statements of individuals that proposed communication facility is aesthetically displeasing are an "inadequate substitute" for appropriate findings based on credible evidence in the record).

Inasmuch as the character of the residential zone was already firmly established by virtue of its proximity to one of Metuchen's industrial zones, it was unreasonable to conclude that residential property values would be seriously diminished by the added 48 feet. A 60 foot tower already exists in the zone. To suggest that the impact of an additional tower would be realistically discernable, given the presence of the existing heavy truck terminal, with the associated heavy traffic, noise and odors, is patently unreasonable, especially since the tower adds to none of these problems.

Consequently, any finding that the height deviation would cause a "substantial detriment" or that any "perceived" detriment would not be outweighed by the regional benefits from an improved telecommunications system, would be devoid of any merit.

## IV. *CONCLUSION*

For the reasons set forth above, the Board's rejection of Comcast's application for a d(3) variance was clearly arbitrary, capricious and unreasonable. It is therefore reversed, and the matter remanded with directions to approve the variance application subject to such reasonable conditions as may be imposed upon, or agreed to by, the applicant, (*See, Sica, supra,* 127 *N.J.* at 167, 603 *A.2d* 30), and, subject to site plan approval. Plaintiff's counsel shall submit an appropriate form of Order incorporating this letter opinion by reference. Jurisdiction is not retained.